DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY.

MARCH TERM, 1879.

---

JOHN A. O'NEILL ET AL., PLAINTIFFS IN ERROR, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON, DEFENDANTS IN ERROR.

1. When lands are sought to be taken for a public use, the public authorities, in the absence of any statutory provision to the contrary, have a reasonable time given them, after the ascertainment of the expense of the scheme, to decide whether to accept or refuse the land at the price fixed.

2. Commissioners duly appointed by force of a special statute, having reported a valuation of certain lands intended to be added to the premises connected with the county jail, &c., and a motion being made at a meeting of the board of freeholders to accept such lands at the price thus fixed, and such motion being rejected, *held*, that such vote was a rejection of the scheme, and was a finality, and that the power given by the act was exhausted.

On error to the Supreme Court.

By an act of the legislature, approved March 18th, 1874, it was made lawful for the board of chosen freeholders of Hudson county to take, by condemnation, for public use, the residue ·of Snake Hill not owned by the county, to be used

for the purposes of an alms-house, jail, &c. In accordance with the provisions of this law, commissioners were appointed to assess the damages of the owners of these lands, and the report of such officers was duly made and filed on November 19th, 1875. At a meeting of the board of freeholders, held January 6th, 1876, a motion to accept the purchase of these lands as condemned was rejected, and, at a subsequent meeting, on March 6th, 1876, (proceedings to compel the board, by *mandamus*, to pay the award having in the meantime been instituted,) a resolution to use all means to defeat those proceedings, and that the board withdraw from the condemnation, and relinquish all pretentions of ever accepting said condemnation and award, was unanimously adopted.

On March 15th, 1877, a resolution was passed as follows, viz. :

"Whereas, no appeal from said award was taken by the last board of freeholders, or any party in interest, within the time required by the provisions of said act, and title to said property having vested in the county, that the board, in pursuance of said proceedings and obligations, do carry into effect the said awards, and pay the amounts," &c.

For the plaintiffs in error, *J. W. Vroom* and *B. Williamson*.

This case is virtually an appeal from the decision of the Supreme Court in the case of *Mabon* v. *Halsted, Director*, 10 *Vroom* 640.

I. The power exercised by the legislature in the enactment of the law in question was legislative in its character, and not subject to judicial review, save to enforce constitutional inhibitions and limitations.

(a) The legislature, in the exercise of the power of eminent domain, has sole power to declare a public use; sole power to determine the estate to be taken; power to cause damages to be assessed, in absence of any constitutional provision, in any equitable and fair mode to be provided by law, with or without the intervention of a jury; power to delegate the deter-

mination of the public purpose to certain corporations or persons. And if the constitution prescribe no mode of exer-cising the right of eminent domain, it is within the power and discretion of the legislature to prescribe such mode as it deems best. The legislature is under no necessity to grant an appeal in these cases. *Constitution of N. J., Art. I.*, § 16; *Sinnickson* v. *Johnson*, 2 *Harr.* 129; *Secomb* v. *Railroad Co.*, 23 *Wall.* 117, and cases cited; *Beekman* v. *R. R. Co.*, 3 *Paige* 75; *Salem Turnpike Co.* v. *County of Essex*, 100 *Mass.* 282; *Butler* v. *Sewer Com'rs*, 10 *Vroom* 667; *Cooley on Const. Lim.* 528; *Potter's Dwar. on Stat.* 378; *Kohl* v. *U. S.*, 91 *U. S.* (1 *Otto*) 374.

(*b*) The courts have power, on grounds of *general policy*, to insist upon a given construction of a statute, but the exercise of this power is only legitimate when the efforts to ascertain the intent of the legislature must be abandoned as hopeless. *Sedg. on Stat. Const.* 252. In general, the policy of a legislative act is not the subject of judicial review. *Cooley on Const. Lim.* 94; *Dash* v. *Van Kleek*, 7 *Johns.* 498; *Osborne* v. *U. S. Bank*, 9 *Wheat.* 866; *Calder* v. *Bull*, 3 *Dall.* 398, opinion of Iredell, J.; *Norwich* v. *County Com'rs*, 13 *Pick.* 61; *Baltimore and Susquehanna R. R. Co.* v. *Nesbit*, 10 *How.* 400; *Sedg. on Stat. Law.* 179; *James* v. *Patten*, 2 *Seld.* 9; *Potter's Dwar. on Stat.* 214, 215; *State* v. *Seymour*, 6 *Vroom* 52.

II. The provisions of this statute as to the time and mode of procedure in condemnation, are mandatory and not directory. *French* v. *Edwards*, 13 *Wall.* 511; *Sedg. on Stat. Law* 316–325; *Cooley on Const. Lim.* 74–78; *People* v. *Schermerhorn*, 19 *Barb.* 558; *Clark* v. *Crane*, 5 *Mich.* 154; *State* v. *Lean*, 9 *Wis.* 292; *Wendel* v. *Durbin*, 26 *Wis.* 390; *Morris Aqueduct Co.* ads. *Jones*, 7 *Vroom* 207–211; *Butler* v. *Sewer Com'rs*, 10 *Vroom* 672.

(*a*) The rule is that any matter of practice prescribed by statute cannot be varied or relaxed. *Webb* v. *Clark*, 2 *Sandf. Sup. Ct.* 647; *Jackson* v. *Wiseburn*, 5 *Wend.* 136; *Ex parte*

*Ostrander,* 1 *Denio* 680 ; *Barclay* v. *Brown,* 7 *Paige* 247 ; *U. S.* v. *Currey,* 6 *How. S. C.* 113.

(*b*) In this case the limitation of sixty days for appeal is "a matter of essence of the thing," and the rule is that statutes prescribing modes of appeal must be strictly followed, and cannot be treated as advisory or directory. *Prop. of Morris Aqueduct* ads. *Jones,* 7 *Vroom* 209 ; *Sedg. on Stat. Law* 322, 372 ; *People* v. *Allen,* 6 *Wend.* 487–8 ; *Jackson* v. *Young,* 5 *Cow.* 269 ; *Gardner* v. *Dudley,* 12 *Gray* 430 ; *Castro* v. *U. S.,* 3 *Wall.* 47.

III. At the filing of the award of the commissioners, the defendants had the right of property and the right of title, and the rights and obligations became vested and absolute after the expiration of the sixty days limited for an appeal, no appeal having been taken by either party.

The defendants adopted a mode of condemnation which has received judicial construction in other states. *Cooley on Const. Lim.* 563, and cases cited in note ; *Westbrook* v. *North,* 2 *Greenl.* 180 ; *Hawkins* v. *Rochester,* 1 *Wend.* 53 ; *People* v. *Brooklyn,* 1 *Wend.* 318 ; *Matter of Mayor of N. Y.,* 6 *Cow.* 571.

And also in this state, where it has been held, with regard to private corporations, that the filing of the report of the commissioners of record, makes the proceeding complete. *Doughty* v. *Somerville R. R. Co.,* 3 *Halst. Ch.* 67 ; *Vail* v. *M. & E. R. R. Co.,* 1 *Zab.* 194 ; *Metler* v. *Easton and Amboy R. R. Co.,* 8 *Vroom* 224, 226 ; *S. C.,* 10 *C. E. Green* 218 ; *Taylor* v. *N. Y. & L. B. R. R. Co.,* 9 *Vroom* 29, 30 ; *State* v. *Hudson Tunnel R. R. Co.,* 9 *Vroom* 550–552 ; *Carpenter* v. *Easton and Amboy R. R. Co.,* 9 *C. E. Green* 258 ; *Reid* v. *Wall Township,* 5 *Vroom* 276 ; *State* v. *Orange,* 3 *Vroom* 54 ; and the case of *Fink* v. *Mayor, &c., of Newark,* 11 *Vroom* 11, is very much in point.

IV. The proceedings of the defendants of January 6th, 1876, was not a withdrawal from the said proceedings in condemnation.

1. Application should have been made to the court for leave to discontinue. *Dillon on Mun. Corp.*, § 473, and cases cited; *Water Com'rs' case*, 2 *Vroom* 72; *Boston and Worcester R. R. Co.* v. *Western R. R. Co.*, 14 *Gray* 258; *Hingham and Quincey Bridge and Turnpike Co.* v. *County of Norfolk et al.*, 6 *Allen* 356.

2. Or the discontinuance or withdrawal should have been by affirmative motion or resolution, and should have been approved by the director-at-large. *Pamph. L.*, 1875, *p.* 325, § 1.

3. There can be no presumption to sustain an irregularity, or to supply a defect, in the proceedings of a public body acting under the provisions of an act of the legislature. *French* v. *Edwards*, 13 *Wall.* 514; *Secomb* v. *Railroad Co.*, 23 *Wall.* 118; *Steuart* v. *Baltimore*, 7 *Md.* 514; 3 *Dane's Ab. of Am. Law* 502; *Neenan* v. *Smith*, 50 *Mo.* 525; *Boonville* v. *Ormrod*, 26 *Mo.* 193; *Wickham* v. *Paige*, 49 *Mo.* 526.

4. The resolution is not a notice of appeal. It does not comply with the provisions of the third section of the statute. *Pamph. L.*, 1874, *p.* 291. The rule is that statutes prescribing modes of appeal must be strictly pursued, and cannot be treated as advisory or directory. See cases cited *supra*, *II.* (*b*).

For the defendants, *J. H. Lippincott.*

The proceedings in condemnation never ripened into an obligation on the part of the county to pay for these lands, either the amount as fixed by the award, in accordance therewith, or otherwise.

The board was not bound by these proceedings to take the land at the price awarded.

The board was simply empowered, upon the filing of the report, to enter upon and take possession of the lands, &c.

The board, upon the award being filed, could exercise its choice whether to take under the award or not.

The second section of the act provides the mode of the condemnation, &c.

It provides for the filing of the report or award in the

office of the clerk of the county within ten days after it is made in writing by the commissioners.

No provision is made for the confirmation of it by any tribunal save that of the board of chosen freeholders of the county.

The next act must be by the board, the public authority, acting for the public, entrusted with the disposition of the public funds and the protection of the public and the tax-payers, to determine whether it will accept the award or condemnation, or withdraw from it.

The questions arising here are—

1. Did the board of chosen freeholders exercise its right of withdrawal from this condemnation?

2. Was the power vested in the board to withdraw from the award and abandon the condemnation?

3. Have they, as a corporate body, ever done any act, such as taking possession, &c., which estops them from defending against the recovery of the award or other compensation for the lands?

Upon the first of the last-above questions, it seems that the board clearly, distinctly, and emphatically renounced the award, withdrew from and relinquished it.

The award was filed November 19th, 1875. December 2d, 1875, the reports of the committee on condemnation, together with the awards, were laid before the board.

On motion of Mr. Young, (member of the board,) the reports of the committee were laid over to next meeting.

Meeting of December 16th, 1875.

The report came up for action. Resolutions doubting the need and propriety of the condemnation were adopted, and also resolutions calling a public meeting on the subject.

The questions arising in this matter were supposed to have been discussed, and the public voice heard from, for, at the next meeting, January 6th, 1876, the following proceedings were had by the board at its open, regular stated meeting:

" The report of the committee and commission on condemnation of lands at Snake Hill was taken up.

"Mr. Young (member of. board) moved to accept the purchase of lands at Snake Hill as condemned.

"Lost on yeas and nays, the same having been ordered and taken."

This was a clear and distinct declaration that the board did not intend further to pursue the condemnation according to the award.

This was before the time to take the appeal, as mentioned by the statute, had elapsed.

It was a conclusive abandonment of the *right* to take under the proceedings that had been instituted.

It was a resolution that the board would go no further in completion of the proceedings of condemnation; that they should stop at once.

The plaintiff in this case acquiesced in this abandonment. No demand was ever made upon the board to pay the award, nor was any proceedings taken by way of *mandamus* or otherwise, to enforce payment against the board for these lands.

The owners acquiesced in this abandonment—understood it to be an abandonment.

For the award in the case of Mabon and others against the board, a suit by *mandamus* was commenced. *Mabon* v. *Halsted*, 10 *Vroom* 640.

The board, immediately after the commencement of this last-mentioned suit, and a long time before the commencement of this suit, (this suit not being commenced until July 21st, 1877,) passed the following resolution :

"*Resolved*, That the counsel of this board be and hereby is instructed to use all means in his power to defeat the *mandamus* proceedings to compel this board to take Snake Hill lands ; that this board withdraw from said comdemnation, and relinquish all pretensions of ever accepting said condemnation and award."

This latter resolution is clearly expressive of the intention of the board, by the resolution of January 6th, 1876 ; besides, it is of itself a withdrawal from the award or condemnation, a relinquishment of all rights under, an entire abandonment,

and conclusive alike upon the board of chosen freeholders and the owners of the lands.

It could never have been binding upon the defendants without a complete and affirmative acceptance.

The facts, then, in this case, constitute an abandonment.

The resolution of January 6th, 1876, was a refusal by the defendants to accept the award of the commissioners. It was an abandonment of the award of the commissioners. The court appointing the commissioners has not approved the award. *Mabon et al.* v. *Halsted, Director, &c.,* 10 *Vroom* 640.

As to the second question arising under this head.

Public authorities are not concluded by an award upon condemnation. They can discontinue, abandon, or withdraw from the condemnation and award at any time before payment or under payment, and even, frequently, after taking possession, unless there be a statutory provision expressly commanding such payment, (which is not the case in this statute.)

" This principle is based upon public policy, and discriminates between proceedings initiated for the acquisition of lands by private companies and those where a merely public agent is the mover ; and, as to the latter, it is said, ' empowered to make the purchase for the public good, he ought not to be forced to conclude it to the public detriment.'

" The principle which underlies is this, that, inasmuch as the price is an important element in determining whether the public good consists with the taking of the land, the public agent should have an election to take the land or not, after the price is settled."

The statute under consideration establishes no period in which the abandonment must take place. The legislature has not taken the option away, and the right must be conceded to a reasonable extent. *Mabon et al.* v. *Halsted,* 10 *Vroom* 640.

It is within the power of a municipal corporation to withdraw from a condemnation of lands to public use, to accept the same or not, unless possession has been taken by the

municipal corporation. *North Mo. R. R. Co.* v. *Lackland,* 25 *Mo.* 515, 534.

As to right of abandonment. *Stacy* v. *Railroad,* 27 *Vt.* 39.

When public officers, acting under statutory authority, have proceeded to condemn lands for the public uses, and an appraisement of damages has been made, but not yet confirmed by the court according to the statute, such proceedings can be discontinued against the assent of the land holders. *In the matter of Water Commissioners of Jersey City,* 2 *Vroom* 72; *Regina* v. *Commissioners of Woods and Forests, &c.,* 15 *Ad. & Ell.* (*N. S.*) 773.

The rights of the parties had not become fixed. 1 *Wend.* 318.

In this case now before the court, there had not been, nor could there be any confirmation.

It must go to the board of chosen freeholders for *rejection or acceptance,* unless an appeal had been taken.

No appeal was taken, and the abandonment took place before the time for appeal had expired, and consequently no appeal could, after such abandonment, be taken; or, if taken, it would be of no avail in the construction of a contract.

The board had the power, if to the interest of the public, at any time to abandon or relinquish the lands on which the awards were made, before taking possession, or before the tender of the amounts of the awards was made.

It is simply a right which they *may* exercise to accept it.

The statute does not impose an imperative duty on them to take these lands.

It simply empowers them to do so.

The language of the act leaves it to their discretion as servants of the public.

It may be that the board are responsible for such damages as may have arisen by their action in this matter.

But they are not bound by the award, but can rightfully abandon or refuse to accept.

Under the language by which the power to open streets, and to take private property for that purpose is usually con-

ferred upon municipal corporations, they may, at any time before taking possession of the property under *completed* proceedings, or *before the final confirmation*, recede from or discontinue the proceedings they have instituted. This may be done, *unless it is otherwise provided by legislative enactment*, before vested rights in others have attached.

Until the assessments of damages have been made, the amount cannot be known, and it is reasonable that, after having ascertained the expense of the project, the corporation should have a discretion to go on with it or not, as it sees fit. 2 *Dillon on Mun. Corp.* 473, and cases cited in the note.

And it has ever been held that, if the municipality deems it best to abandon the proposed work or project, it may do so, and discontinue the proceedings, although it may have taken possession of the premises. By taking such possession, it is argued that the corporation does not impliedly agree to purchase at the appraisement. It may, nevertheless, discontinue the proceedings, and the land owner can only demand the premises and damages for being deprived of them, and for injuries thereto. 2 *Dillon on Mun. Corp.*, § 474, and cases cited in note 2.

The land owner may have a special action for damages for any wrongful and injurious acts of the corporation in the course of the proceedings. *Ib., and note* 1.

And, in case of *Graff* v. *Baltimore*, 10 *Md.* 544, it was held that the city was bound upon an inquisition of damages, although confirmed by the court which had jurisdiction. It might be that a special action on the case would lie for damages. *R. R. Co.* v. *Nesbitt*, 10 *How.* (*U. S.*) 395; *State* v. *Graves*, 19 *Md.* 351.

In the case now before the court, no tribunal is established by the statute to confirm the report, nor by any action to conclude the rights of the parties.

The statute is uncertain in this particular, and it certainly, from the language of the act, was intended that the defendants should have the power to accept or reject the lands at the price appraised, *and stop at that point*.

It could not take possession under the award alone. There must be payment or tender.

It is, it seems, clear that the power existed to abandon the lands under the award.

It also is clear that such abandonment took place, and no action can lie for the price established by the award.

On these grounds the judgment of the Supreme Court should be sustained. *Mabon* v. *Halsted*, 10 *Vroom* 645; *In the matter of Anthony street*, 20 *Wend.* 618; *New York* v. *Mapes et al.*, 6 *Johns. Ch.* 46; *In matter of Canal street*, 11 *Wend.* 155; *Nathan* v. *Mayor, &c., of Brooklyn*, 1 *Hill* (*N. Y.*) 545; *Mallard et al.* v. *Lafayette*, 5 *La. Ann.* 112; *Matter of Roffignac street*, 4 *Rob.* (*La.*) 357; *City of St. Joseph* v. *Hamilton et al.*, 43 *Mo.* 282; *State* v. *Hug*, 44 *Mo.* 116; *State* v. *Graves*, 19 *Md.* 351; *People* v. *Brooklyn*, 1 *Wend.* 318; *Duncan* v. *Louisville*, 8 *Bush* (*Ky.*) 98; *Municipality No. 3* v. *Levee Steam Cotton Press Co.*, 7 *La. Ann.* 270; *Hullin* v. *Municipality*, 11 *Rob.* (*La.*) 97; *Balt. & Susq. R. R. Co.* v. *Nesbitt*, 10 *How.* (*U. S.*) 397; *Stafford* v. *Albany*, 7 *Johns.* 541.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This suit was brought to recover a sum of money that the plaintiffs allege was awarded to them by commissioners, for lands which they aver were taken from them by condemnation for public use by the defendant, by force of an act of the legislature passed for that purpose. The defence set up was that the proceedings to condemn the lands referred to, being inchoate, were given up and abandoned before they ripened into a legal obligation. Whether such contention is well founded is the proposition to be decided.

The statute which has given rise to this dispute was enacted on the 18th of March, 1874, and it declares "that it shall be lawful for the board of chosen freeholders of Hudson county to take, by condemnation for public use, all that portion of Snake Hill not now owned by the said county of Hudson."

In the second section it directs a survey of these lands to be made, and provides for the appointment of three commissioners "to condemn and appraise said lands," who are to meet upon a defined notice, and who are to act under oath, and their report is to be filed, within ten days from the time of the making of their appraisement, in the clerk's office of the county of Hudson. A further provision is, in the statutory language, that "on payment, or tender of payment, of the amount awarded as hereinafter provided, the said board of chosen freeholders is hereby empowered to enter upon and take possession of the said lands for the use of the inhabitants of the county of Hudson." An appeal is then given to either party, to the Circuit Court, "at any time within sixty days after the filing of the said report by the said commissioners."

Under this authority, commissioners were regularly appointed to assess the damages that would be sustained by the plaintiffs by the taking of their land, and a report in that respect, made by these officers, was duly filed in the clerk's office of the county of Hudson. The defendant in error claims that prior to the expiration of the time given by the statute for an appeal from the finding of the commissioners, it abandoned the proceedings to condemn the land. To this contention the plaintiffs make two answers. First, that the legal right to abandon the proceedings, at the time in question, did not exist; and, in the second place, that there was, in point of fact, no abandonment.

The first point I think untenable, both on reason and authority. As much as fourteen years ago, in *Matter of Water Commissioners of Jersey City*, 2 *Vroom* 72, a rule was adopted by the Supreme Court that is entirely contradictory of this particular contention. It is true that the facts of the case referred to were somewhat different from those now in controversy, but the principle on which the determination of the court was founded is as applicable on this occasion as in the former instance. That principle in substance was this: that whenever land is sought to be taken for a public purpose, the public authorities, in the absence of any statutory pro-

vision to the contrary, have a reasonable time given them, after the ascertainment of the expense of the scheme, to decide whether to accept or refuse the land at the price fixed. On every account, that rule commends itself to my judgment. With respect to the land owner, the procedure is fair and just: it calls for a reasonable valuation of his land, and if the public reject it at such estimation, he suffers, in general, no detriment; and if, in any exceptional case, any injury is done to him, he is entitled to reparation. On the other side, the rule in question is a necessity in view of the rational conduct of public affairs: the question whether a projected improvement is wise or unwise, expedient or inexpedient, cannot be answered by any one who is ignorant of the expense that it involves, and therefore to require public agents, in handling these matters, to disregard this plain dictate of common sense, would be altogether absurd. A man of prudence relinquishes a project when he finds the cost is likely to exceed, in a large measure, its benefit; it would seem intolerably unreasonable to require the agent of the public to pursue the opposite course. In construing any statute authorizing one of these undertakings, every reasonable intendment should be against reading it in a sense that would put the public in this false position. The legal effect of such acts should be held to be that they compel the land owner to offer the public the required land at the ascertained price, and that when such price has been finally ascertained, the public has a reasonable time within which to make an election either to accept or reject the offer. Such was the ground of decision in the case, above cited, of the water commissioners of Jersey City. That decision was approved of and acted on in the case of *Mabon* v. *Halsted, Director, &c.*, 10 *Vroom* 640, and it is cited, among many other authorities, as correctly stating the legal rule, by Judge Dillon in his work on Municipal Corporations. 2 *Dillon on Mun. Corp.*, § 473, *note*. The doctrine as settled has the great preponderance of judicial opinion in its favor, and it should not now be disturbed or called in question. This first contention cannot prevail.

But, in the next place, it is insisted that, as a matter of fact,

the defendent did not reject the proposed condemnation before the time for an appeal had run out.

What was done was this: the report of the commissioners having been filed, afterwards, and before the expiration of the time for appealing, a motion was made, at a regular meeting of the board of freeholders, "to accept the purchase of lands at Snake Hill, as condemned," and such motion was lost. It is now said that this vote was not a rejection of the scheme of condemnation. But I can see no solidity in the reasons given in support of this position. One reason urged was, that the right to withdraw was lost by the filing of the award of the commissioners by the counsel of the board of freeholders; but it is clear such act cannot conclude the rights of the public: the statute makes it the duty of the commissioners to file the report in the clerk's office, and the counsel, in putting the report on file, must be regarded as their agent, and not, in that respect, as acting for the county. Besides, the counsel in question had no authority either to accept or to reject the award of the commissioners, so that his act, however construed, cannot affect the rights of the defendant.

But again, it is insisted that the vote negativing the motion to accept was neither a withdrawal or acceptance. But this is a refinement that should not form the basis of judicial action. I have already likened the ascertainment of the value of the land, by the exercise of the power of eminent domain, to putting the parties in the situation of seller and buyer: the former offers his land to the latter at a fixed sum. Such being the position of the land owner and the public, as I think substantially it is, a refusal by the public at the price fixed would seem to be a finality. The question is whether the county will take the land at the ascertained sum, and the answer is, no; and, in my opinion, that answer was not only definite, but it was final, so that the land owner had the right to consider the proceedings concluded, and the entire force of the act spent. He was in no danger of a second assessment, for the plain reason that the act did not authorize such a proceeding. This is the view taken of the legal effect of this vote by

In matter of drainage along Pequest River.

the Supreme Court in the case of Mabon v. Halsted, already cited.

Regarding the vote above stated as conclusive of the proceedings under the statute, and that such conclusion was an exhaustion of the statutory power to acquire the lands in question, it is obvious that the subsequent action of the freeholders can neither vest the county with the title of the lands in question nor the plaintiffs with the right to sue for their value. The act gave the public authorities the power to acquire this land in a particular mode; that mode was rejected. What was subsequently done by them, either by voting or taking possession of the premises, cannot affect the present suit.

The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DALRIMPLE, DEPUE, DIXON, KNAPP, SCUDDER, VAN SYCKEL, WOODHULL, DODD, GREEN, LATHROP, WALES. 13.

*For reversal*—None.